IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 1:12cr514 |
| | ) |
| FEDERICO REYMUNDO LOPEZ-REYES | ) |

## MEMORANDUM OPINION

In this criminal prosecution, defendant pled guilty, without a written plea agreement, to a one-count indictment charging him with unlawfully re-entering the United States following a prior removal, in violation of 8 U.S.C. § 1326(a). The subsequent sentencing proceeding presented the question whether defendant's two prior Virginia state convictions for unlawful bodily injury in violation of Va. Code § 18.2-51 constitute predicate "crimes of violence" within the meaning of U.S.S.G. § 2L1.2(b)(1)(A), thereby subjecting defendant to a 12-level enhancement to his offense level pursuant to the Sentencing Guidelines. For the reasons elucidated below, the prior convictions at issue are not qualifying "crimes of violence" and the 12-level enhancement to defendant's offense level is therefore not warranted in this case.

I.

The sentencing analysis properly begins with the language and requirements of the applicable Sentencing Guidelines. In this regard, U.S.S.G. § 2L1.2 provides for a base offense of 8 where, as here, the charged offense involves "unlawfully entering or remaining in the United States." Yet importantly, § 2L1.2(b)(1)(A) goes on to provide for a 12-level enhancement to this base offense level "[i]f the defendant previously was deported . . . after . . . a conviction for a

felony that is . . . a crime of violence."[1] In this case, the Probation Officer recommended application of a 12-level enhancement pursuant to § 2L1.2(b)(1)(A) based on defendant's two Virginia state convictions from 2002 for unlawful bodily injury in violation of Va. Code § 18.2-51. The government concurred with the Probation Officer's recommendation in this regard. Defendant, however, objected to application of the 12-level enhancement, arguing that his prior convictions for unlawful bodily injury in violation of Va. Code § 18.2-51 are not qualifying "crimes of violence" within the meaning of § 2L1.2(b)(1)(A).

For purposes of the § 2L1.2(b)(1) analysis, the phrase "crime of violence" is defined as:

> any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses . . ., statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2, App. Note 1(B)(iii). Given that the crime of "unlawful bodily injury" is not one of the offenses specifically enumerated in the above definition, the only question presented here is whether the crime of unlawful bodily injury, in violation of Va. Code § 18.2-51, fits within the residual clause of the defining language, namely whether it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.*

---

[1] More specifically, § 2L1.2(b)(1)(A) provides for the imposition of either (i) a 16-level enhancement to a defendant's base offense level if the defendant's prior predicate conviction for a crime of violence is assessed criminal history points under Chapter Four of the Guidelines, or, as pertinent here, (ii) a 12-level enhancement if the prior conviction does not result in the assessment of criminal history points. In this instance, defendant has not received any criminal history points for his Virginia convictions for unlawful bodily injury because defendant received five-year suspended sentences on each of those convictions, which sentences were imposed more than ten years prior to commencement of the instant offense. *See* U.S.S.G. §§ 4A1.2(a), (b) and (e).

2

Before reaching the precise question presented here, it is first necessary to set forth a brief review of the governing legal principles. Thus, in determining whether a particular prior conviction constitutes a qualifying predicate crime of violence, sentencing courts must first apply the categorical approach announced by the Supreme Court in *United States v. Taylor*, 495 U.S. 575, 600-02 (1990). Under this approach, "a federal sentencing court may look only to the fact of conviction and the statutory definition of the offense of conviction to determine whether the offense" is a qualifying crime of violence. *United States v. Harcum*, 587 F.3d 219, 222 (4th Cir. 2009) (citation omitted). In other words, the categorical approach requires a federal sentencing court "to analyze the offense generically—that is, by relying solely on its essential elements, rather than on the particular underlying facts." *Id.* (citations and internal quotation marks omitted).

Here, a careful review of the pertinent Virginia statute — Va. Code § 18.2-51 — makes clear that the crime of "unlawful bodily injury," as charged pursuant to that statute, is not categorically a crime of violence for purposes of § 2L1.2(b)(1)(A). The analysis that leads to this conclusion must begin with an examination of § 18.2-51, which provides, in its entirety, as follows:

> If any person maliciously shoot, stab, cut, or wound any person *or by any means cause him bodily injury*, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

Va. Code § 18.2-51 (emphasis added). Importantly, § 18.2-51, by its express terms, is not limited to conduct that necessarily involves the use or threatened use of physical force, such as stabbing, cutting, punching, or other commonly used means of physical force. Instead, if an individual acts with the requisite "intent to maim, disfigure, disable, or kill," then that individual

3

violates § 18.2-51 where his conduct causes bodily injury to another individual "by any means," including, for example, by poison or trickery. From this it logically follows that the crime of "unlawful bodily injury," as contemplated by the express terms of § 18.2-51, does not, categorically, have "as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.*

This conclusion is consistent with, and supported by, pertinent Virginia case law interpreting § 18.2-51. For example, in *Long v. Commonwealth*, 379 S.E.2d 473 (Va. App. 1989), the Virginia Court of Appeals was presented with the question whether releasing and commanding a pitbull to "sic" and "kill" another individual fell within § 18.2-51's prohibition of conduct that causes bodily injury to another person "by any means." In concluding that such conduct did fall within the statutory prohibition, the court correctly noted that "the statute, by its explicit terms, *does not contain a limitation upon the means employed.*" *Id.* at 475 (emphasis added). Instead, "the focus of the established 'test of the offense of maliciously . . . causing bodily injury is the intent with which the result is accomplished rather than the nature of the means.'" *Id.* (quoting *Dawkins v. Commonwealth*, 41 S.E.2d 500, 504 (Va. 1947)).

Nor is *Long* the only Virginia case in which a defendant was charged with violating § 18.2-51 by means other than physical or threatened physical force. For example, in *Banovitch v. Commonwealth of Virginia*, 83 S.E.2d 369 (1954), an indictment was returned against the defendant physician pursuant to § 18-70 of the Virginia Code — the predecessor statute to § 18.2-51[2] — charging that "he unlawfully made an assault on [a female patient] and by the use of certain salves and medicines unlawfully caused her bodily injury, with the intent to main and

---

[2] Similar to the current version of § 18.2-51, § 18-70 provided that "if any person maliciously or unlawfully shoot, stab, cut or wound another, *or by any means cause him bodily injury*, with the intent to maim, disfigure, disable or kill him, he shall be punished as the statute prescribes." *Banovitch*, 83 S.E.2d at 373 (emphasis added).

4

disfigure her." *Id.* at 370-71. There, the Supreme Court of Virginia again noted that "[p]roof of the [defendant's] specific intent is necessary to a conviction under the statute" and thus, "the test of the offense of maliciously or unlawfully causing bodily injury is the intent with which the result is accomplished rather than the nature of the means, where the means are specified and established." *Id.* at 373 (internal quotation marks and citations omitted). And although the evidence in *Banovitch* was ultimately found not to "furnish proof beyond a reasonable doubt that defendant applied the salves to the [patient]...with the specific intent to maim or disfigure her," there was no dispute in that instance that such conduct — which clearly did not involve the use of physical force or threatened physical force within the meaning of § 2L1.2(b)(1)(A)[3] — could have amounted to a violation of § 18.2-51 had it been accompanied by the requisite specific intent. *Id.* at 374. Thus, *Long* and *Banovitch* both support the conclusion that the crime of unlawful bodily injury in violation of § 18.2-51 does not, categorically, have "as an element the use, attempted use, or threatened use of physical force against the person of another."

In an attempt to avoid this result, and thereby argue that the Virginia crime of unlawful bodily injury in violation of § 18.2-51 is categorically a crime of violence, the government relies on several unpublished decisions from the Fourth Circuit and elsewhere. Yet, a careful review of these cases discloses that neither persuasively supports the conclusion that a violation of § 18.2-51 is categorically a crime of violence for purposes of U.S.S.G. § 2L1.2(b)(1)(A).

---

[3] This is particularly so in light of the Supreme Court's decision in *Johnson v. United States*, 130 S.Ct. 1265 (2010), where the phrase "use, attempted use, or threatened use of physical force," as used in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was expressly limited as including only "violent force—that is, force capable of causing physical pain or injury to another person." In other words, *Johnson* rejects the notion that the phrase "physical force," as used in this context, would include the use of only <u>minimal</u> physical force, such as the force necessary to open a door, for example, or to apply a medicinal salve to a patient's face.

5

The government first cites the Fourth Circuit's two-page unpublished decision in *United States v. Candiloro*, 322 F. App'x 332, 2009 WL 990543 (4th Cir. 2009). There, the defendant, like the defendant here, argued that the plain meaning of the phrase "by any means," found in § 18.2-51 of the Virginia Code, "encompasses conduct that does not involve the use, attempted use, or threatened use of physical force against the person of another," as required for a prior felony conviction to serve as a predicate "violent felony" for purposes of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). *Id.* at 333. At the outset, the Fourth Circuit noted that "the phrase 'by any means' standing alone could possibly be given the broad interpretation [defendant] argue[d] for," but it went on to conclude—summarily and without any explanation—that "the phrase has been narrowed by established Virginia precedent." *Id.* In support of that conclusion, the Fourth Circuit cited only two Virginia cases, one decided in 1928 and the other in 1955. Yet neither of the cited cases, closely read, supports the assertion that the phrase "by any means," as used in § 18.2-51, has been narrowed by established Virginia precedent.

In the first of these cases—*Harris v. Commonwealth*, 142 S.E. 354, 355 (1928)—the Supreme Court of Virginia simply limited the definition of the term "wound," as used in the predecessor statute to § 18.2-51, to its common law meaning, thus requiring "a complete breaking of the skin," rather than a mere bruise. *Harris*, 142 S.E. at 355. Significantly, the specific statutory language at issue here, and indeed, at issue in *Candiloro*—namely, the phrase "by any means"—was neither presented nor addressed in *Harris* in any respect.[4]

---

[4] In fact, although the *Harris* court ultimately concluded that the indictment at issue there "was too narrow in its terms to include as a felony the bruise which was in fact inflicted," given that the indictment there charged defendant with violating the statute only by "wounding" another individual, the court went on to note that the evidence "was nevertheless sufficient to show bodily injury, with intent, etc., under the same statute" and "the prosecuting attorney should have offered to amend the indictment so as to make the allegation and proof correspond." *Id.* at 356.

6

The second case cited by the Fourth Circuit in *Candiloro* was *Harper v. Commonwealth*, 85 S.E.2d 249 (1955). Like *Harris*, *Harper* concerned matters wholly unrelated to the "by any means" language of § 18.2-51 at issue here and in *Candiloro*. Rather, the *Harper* decision addressed arguments related primarily to the sufficiency of the evidence to support a defendant's jury conviction for assault and battery and the propriety of certain instructions given to the jury concerning issues of self-defense. Thus, *Harper* provides no support for the Fourth Circuit's conclusion in *Candiloro* that "the phrase ["by any means", as used in § 18.2-51,] has been narrowed by established Virginia precedent." *Id.*

In the end, the Fourth Circuit concluded in *Candiloro* that "[i]n light of the authoritative interpretation Virginia courts have given § 18.2-51, the district court did not err" in determining that defendant's prior Virginia convictions for unlawful wounding in violation of § 18.2-51 qualified as predicate violent felony convictions, thereby subjecting defendant to a sentencing enhancement pursuant to ACCA. *Candiloro*, 322 F. App'x at 333. Yet, as noted above, the Fourth Circuit provided no explanation or analysis with respect to the so-called "authoritative interpretation Virginia courts have given § 18.2-51," nor did the Fourth Circuit address or even cite the *Long* and *Banovitch* decisions, both of which support a broad interpretation of the "by any means" language contained in the statute. Thus, the Fourth Circuit's decision in *Candiloro* is entirely unpersuasive on the merits and is not controlling, as it is unpublished.[5]

Simply put, neither *Candiloro*, nor any of the other cases on which the government relies, provides any analysis of the "by any means" language specifically at issue here and those cases

---

[5] The Fourth Circuit's decision not to publish *Candiloro* is perplexing given the novel nature of the issue presented in that case. *See* Fourth Circuit Local Rule 36(a) (providing that an "Opinion[] delivered by the Court will be published" if the opinion "establishes, alters, modifies, clarifies, or explains a rule of law within this Circuit").

are accordingly unpersuasive.⁶ Moreover, both the express statutory language of § 18.2-51, as well as pertinent Virginia case law interpreting that statute, support the conclusion that the crime of unlawful bodily injury in violation of § 18.2-51 does not, categorically, have "as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* Indeed, this is so because the statute, by its clear and unambiguous terms, can be violated by conduct that does not necessarily involve the defendant's use or threatened use of physical force against another individual.⁷

But this still does not end the analysis, for it is well-settled that the categorical approach "does not always reveal the nature of the asserted predicate offense encountered by a sentencing court." *Harcum*, 587 F.3d at 223. Thus, the Supreme Court announced in *Taylor* a modified categorical approach, namely that "a sentencing court is entitled, in the proper circumstances, to go beyond the scope of the categorical approach and assess the underlying charging documents"

---

⁶ For example, the government also relies on the Ninth Circuit's unpublished decision in *United States v. Cobo-Raymundo*, 493 F. App'x 848, 2012 WL 3554676 (9ᵗʰ Cir. 2012). There, the Ninth Circuit correctly recognized that "[t]o be convicted under § 18.2-51, a person necessarily must have shot, stabbed, cut, wounded, or otherwise caused bodily injury to another person." *Id.* at 850. But from this, the court went on to conclude summarily that this "means that the offense 'has as an element the use . . . of physical force against the person of another." *Id.* The court further noted, again without analysis or explanation, that "§ 18.2-51 clearly requires the intentional use of physical force because it contains as an element "the intent to maim, disfigure, disable, or kill." Significantly, the Ninth Circuit did not directly confront in *Cobo-Raymundo* the "by any means" aspect of § 18.2-51, nor did the Ninth Circuit contemplate situations involving poison, trickery, or otherwise where the statute could be violated without the defendant applying "physical force against the person of another."

⁷ The fact that the vast majority of the cases that may be prosecuted under § 18.2-51 may, in fact, involve a defendant's use of physical force against another person does not alter the fact that the statutory prohibition is not limited in that respect. Rather, the statute, as written, is broadly stated and, contrary to the Fourth Circuit's unpublished decision in *Candiloro*, the Virginia courts have never expressly narrowed the statutory language to require, as an element of the offense, the use or threatened use of physical force against another person. Indeed, to do so would effectively read out of the statute the phrase "by any means," a task that is appropriately left to the Virginia legislature.

or other specifically-approved documents or materials to ascertain whether a particular offense qualifies as a predicate crime of violence. *Id.* (citing *Taylor*, 495 U.S. at 602).

*Taylor*, of course, was decided in the context of a prior jury conviction. Fifteen years later, in *Shepard*, the Supreme Court expanded *Taylor*'s modified categorical approach to cases involving guilty pleas, as presented here. And in the plea context, *Shepard* teaches that the modified categorical inquiry "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26. Thus, *Taylor* and *Shepard*, read together, hold that "without a charging document that narrows the charge" to a crime of violence, the only certainty of a crime of violence "lies in jury instructions, or bench-trial findings and rulings," or, in the case of a guilty plea, "in the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea." *Id.* at 25.

Importantly, it is the government's burden to prove by a preponderance of the evidence that defendant's prior convictions for unlawful bodily injury qualify as predicate crimes of violence for purposes of § 2L1.2(b)(1)(A). *See Harcum*, 587 F.3d at 222. And here, the government has failed to produce any *Shepard*-approved documents sufficient to meet its burden in its regard. To be sure, although the government has submitted a copy of one of the two indictments returned against defendant in the Virginia state court proceeding, that indictment simply tracks the statutory language of § 18.2-51 and does not specify the means—whether by physical force or otherwise—by which defendant caused the unlawful bodily injury. In other words, because the indictment does not "narrow[] the charge to a crime of violence" by specifying that the use or threatened use of physical force was involved in the commission of the

9

offense, that charging document cannot satisfy the government's burden under *Shepard*'s modified categorical approach. *Shepard*, 544 U.S. at 25. Nor has the government produced any other "comparable judicial record" from the state court proceedings confirming that defendant's convictions for unlawful bodily injury, in fact, involved "the use, attempted use, or threatened use of physical force against the person of another" so as to constitute a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A). *Shepard*, 544 U.S. at 26.[8]

## II.

In sum, therefore, the crime of unlawful bodily injury in violation of § 18.2-51 does not, categorically, have "as an element the use, attempted use, or threatened use of physical force against the person of another," as required to constitute a "crime of violence" for purposes of U.S.S.G. § 2L1.2(b)(1)(A). Nor has the government produced any *Shepard*-approved documents to satisfy its burden of establishing, under the modified categorical approach, that defendant's prior convictions for unlawful bodily injury qualify as predicate crimes of violence under § 2L1.2(b)(1)(A). Accordingly, the prior convictions at issue are not qualifying "crimes of

---

[8] In this regard, it is clear that the immigration-related documents submitted by the government do not satisfy the government's burden under *Shepard*'s modified categorical approach. Indeed, not only are such materials not among the list of *Shepard*-approved documents, but they also contain no "admissions [on the part of the defendant] or accepted findings of fact confirming the factual basis" for defendant's plea of guilty to unlawful bodily injury in violation of Va. Code § 18.2-51. Moreover, the definition of "crime of violence" at issue in the immigration context— namely, the definition set forth at 18 U.S.C. § 16—is significantly broader than the definition set forth in U.S.S.G. § 2L1.2. *See* 18 U.S.C. § 16 (defining a "crime of violence" as either "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense").

10

violence" and a 12-level enhancement to defendant's offense level pursuant to § 2L1.2(b)(1)(A) is not appropriate in this case.[9]

An appropriate Judgment and Order has already issued.

Alexandria, VA
May 10, 2013

/s/
T. S. Ellis, III
United States District Judge

---

[9] It is important to note that the government likely could have avoided the result reached here by ordering and producing a copy of the transcript from defendant's plea hearing in Virginia state court, which transcript likely would have included defendant's own admission that physical force was, in fact, used in the commission of the offenses in 2002. Indeed, it appears clear from a police report attached to the original state criminal complaint—which, of course, is not a *Shepard*-approved document and thus cannot be considered in the instant analysis—that the underlying offense conduct involved defendant beating his estranged wife and her boyfriend repeatedly with a bat or large stick.